IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA , | ) | Case No. 5:24-cr-00372-3 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| STEPHEN REDD, | ) | |
| | ) | **ORDER & OPINION** |
| Defendant. | ) | |
| | ) | |

Defendant Stephen Redd has been charged with one count of conspiracy to possess with intent to distribute a controlled substance and one count of attempted possession with intent to distribute fentanyl. The drugs were recovered in a November 29, 2021, search of a United States postal parcel pursuant to a federal search warrant issued that same day. Redd has moved for, *inter alia*, a *Franks* hearing to challenge the validity of the affidavit supporting the warrant.

I. **Factual Background**

On November 26, 2021, Postal Inspector Marc Kudley at the U.S. Postal Service ("USPS") Processing & Distribution Center in Cleveland, Ohio, identified a USPS Priority Mail Express Large Flat Rate Box bearing tracking number EJ751624273US, addressed to Arrion Jackson at 72 Safer Plaza, Akron, OH 44306, with a return address of James at 8130 W Indian School Rd, Phoenix, AZ 85033 (the "Subject Parcel"). ECF 85-1, Kudley Aff. ¶ 3. Phone numbers were written for both the sender and addressee, but had been scratched out with a pen. *Id.* ¶ 4. Based on his training and experience, Inspector Kudley knew that Arizona "has historically been a source area for mailed controlled substances into Northern Ohio." *Id.* ¶ 6. Inspector Kudley searched

CLEAR, an electronic database reliably used in previous investigations, to determine that there was no association between Arrion Jackson and the listed delivery address; however, an individual named Arrion Motley was associated with that address. *Id.* ¶ 7. Another CLEAR search was unable to identify any individual with the first or last name of "James" associated with the listed return address. *Id.* ¶ 8. Inspector Kudley had knowledge and experience that parcels transporting controlled substances often used alternative names to conceal individuals' identities in the event the parcel is seized. *Id.* ¶ 9.

Relying on his training and experience, Inspector Kudley suspected that the Subject Parcel could be transporting controlled substances and secured the parcel until the dog handlers with the Cuyahoga County Sheriff's Office returned from holiday leave the following Monday. *Id.* ¶ 10. The Subject Parcel remained secured at the field office over the weekend. *Id.* On November 29, 2021, a narcotic detection canine ("Ciga") gave a positive alert on the Subject Parcel during a sniff-test containing a lineup of several blank parcels and the Subject Parcel. *Id.* ¶ 11. Ciga and his handler, Detective Michael Twombly, have worked together since 2013, and were both certified by the Ohio Peace Officers Training Academy in October 2021 and the North American Police Work Dog Association in November 2021. *Id.* ¶ 12. At the time of the sniff-test, Ciga was certified to alert to the presence of the odors of marijuana, cocaine, heroin, methamphetamine, and their derivatives. *Id.*

Using all of the above-described information, Inspector Kudley obtained a search warrant for the Subject Parcel. The search warrant was executed on November 29, 2021, and the items found during the search became the subject of a nine-count indictment in this case, filed on October 2, 2024.

## II. Procedural Background

Redd challenges the admissibility of the fruits of the search warrant, filing a motion for suppression on August 11, 2025. ECF 82. Redd requested a *Franks* hearing in the same motion. The Government filed its opposition on September 2, 2025, ECF 85, and Redd submitted a reply on September 12, 2025, ECF 86. An evidentiary hearing as to the suppression motion is scheduled for September 30, 2025. However, as the motion for a *Franks* hearing has been fully briefed, that matter is now ripe for ruling.

## III. Standard of Review

A defendant has the limited right to challenge the veracity of an affidavit supporting an executed search warrant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *see also United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). A defendant is entitled to an evidentiary hearing on the sufficiency of the affidavit if he "(1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and (2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Young*, 847 F.3d 328, 348-49 (6th Cir. 2017) (quotation omitted).

In order to establish the need for an evidentiary hearing, a defendant must offer more than conclusory allegations when alleging a "deliberate falsehood." *Franks*, 438 U.S. at 171. The motion must include an "offer of proof . . . point[ing] out specifically the portion of the warrant affidavit that is claimed to be false" and should include "a statement of supporting reasons." *Id.* This should include supporting affidavits or reliable statements of witnesses, or include a satisfactory explanation for their absence. *Id.* The burden is higher when a defendant alleges the affiant omitted facts; he must show that the omission was done to <u>intentionally mislead</u> the judge

3

into issuing a search warrant. *See United States v. Hampton*, 760 F. App'x 399, 404 (6th Cir. 2019) (citing *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)).

Further, an affidavit supporting an application for a warrant has a "presumption of validity." *Franks*, 438 U.S. at 171. While a defendant can challenge the truthfulness of an affidavit used to acquire a search warrant, great deference is afforded to a finding of probable cause. *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000). A magistrate needs only a "substantial basis" for issuing a search warrant considering the totality of the circumstances. *Id.* (quoting *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994)).

IV.     Analysis

Here, Redd fails to offer any evidence that Inspector Kudley intentionally or recklessly included, either through a false statement or an omission in his affidavit, information that would materially alter the finding of probable cause to support the search warrant. Redd also fails to offer any evidence that the alleged omissions were done with the <u>specific intent</u> to mislead the magistrate judge.

In his motion, Redd argues that Inspector Kudley misled the magistrate judge by failing to mention that Ciga was not certified to detect fentanyl or 4-ANPP, but had previously alerted to fentanyl in other lineups, and therefore was not a reliable source to support probable cause. ECF 82 at 6-7. However, there was no mention of either fentanyl or 4-ANPP in the application for a search warrant—only a "controlled substance" as defined in 21 U.S.C. § 841(a)(1). Indeed, there is no evidence that Inspector Kudley was looking for any specific type of controlled substance. Ciga, as a dog, also cannot communicate which specific controlled substance he has alerted to and can only alert his handler to the presence or non-presence of a controlled substance. And since Redd does not contest Ciga's training or certification for controlled substances other than fentanyl

4

or 4-ANPP, Ciga's alert is presumed to be a reliable source of probable cause. *See Florida v. Harris*, 568 U.S. 237, 247-48 (2013) ("If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."); *see also United States v. Ligon*, 861 F. App'x. 612, 621 (6th Cir. 2021) (affirming the district court's presumption of Ciga's positive alert to be probable cause where the affidavit contained a nearly identical description of Ciga's credentials as the affidavit in the instant case, and the defendant did not challenge Ciga's credentialing). Moreover, while not explicitly required by *Franks*, Redd does not include any affidavit or reliable witness statement in support of his allegation that Inspector Kudley specifically intended to mislead the magistrate judge by omitting that Ciga is not certified to detect fentanyl or 4-ANPP.

   Even if Redd had satisfied his burden of showing evidence of the falsehood, he has not shown that this omission was material to the "probable cause" finding supporting the search warrant. To succeed on this second prong of the test, the defendant must show that probable cause would not have been found if the deliberate falsehood been corrected in the affidavit. *See United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989). The affidavit stated that Ciga was trained to alert to the presence of "marijuana, cocaine, heroin, methamphetamine ("crystal meth"), and/or their derivatives[,]" which are all controlled substances under 21 U.S.C. § 841(a)(1). ECF 85-1, Kudley Aff. ¶ 12. Had Inspector Kudley mentioned that Ciga was not certified to alert to fentanyl or 4-ANPP, there would still be a substantial basis for a search warrant for the parcel, considering Ciga's training and certifications to alert to other controlled substances and Inspector Kudley's testimony about his own knowledge and experience.

Outside of the two-prong test, Redd attempts to extend the Supreme Court's holding in *Florida v. Harris*, 568 U.S. 237 (2013), to his own. Redd argues that *Harris* requires the district court provide him with an opportunity to challenge Ciga's reliability, whether by cross-examining Detective Twombly or introducing his own fact expert. ECF 82 at 4-6. However, as the Sixth Circuit has affirmed, there is no evidence to suggest the Supreme Court intended for the *Harris* holding to extend beyond the specific circumstances of that case: a warrantless, open-air sniff, where the question on review was whether the police officer had probable cause. *United States v. McCarley-Connin*, 148 F.4th 808, 817-18 (6th Cir. 2025) (noting that the court "do[es]n't read *Harris* to require an evidentiary hearing for searches pursuant to a warrant, based on a dog sniff" because, for judicial review of a magistrate's finding of probable cause, "the normal rules governing when a district court should hold an evidentiary hearing remain"). This Court is bound by Sixth Circuit precedent. Since Ciga's alert was the basis for a warrant affidavit, and not a warrantless search, Redd's only recourse is through *Franks*' two-prong test. *Id.* at 818 (affirming that "when the dog sniff is the basis of a warrant affidavit, the defendant's recourse is in *Franks*" and not *Harris*). As explained above, Redd has failed to meet his burden for either of the required prongs necessary for an evidentiary *Franks* hearing.

V. **Conclusion**

Redd's motion for a *Franks* hearing seems to be based on the fact that the drug found in the search, fentanyl, was not one that Ciga was trained to detect. That may be a basis to cross-examine Detective Twombly at the suppression hearing, but it provides no basis to support a claim that Inspector Kudley made a false statement in the search warrant affidavit.

For the reasons stated herein, Defendant Redd's motion for a *Franks* hearing is DENIED.

**IT IS SO ORDERED.**

Dated: September 25, 2025             *s/Dan Aaron Polster*
                                                           United States District Judge